UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 23-cr-64 (CJN) |
| JASON REHMAN, | : |
| Defendant. | : |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MR. REHMAN'S MOTION FOR RELEASE UNDER 18 USC 3145 (C)

Jason Rehman, through counsel, respectfully submits additional authorities in support of his Motion to remain on release under 18 U.S.C. § 3145(c). Mr. Rehman writes to point to cases by judges throughout this District that have released individuals notwithstanding the "mandatory" detention language, citing the "exceptional circumstances" clause permitting release pending sentencing. In support of his Motion, Mr. Rehman states the following.

### Background

On November 21, 2024, Mr. Rehman pleaded guilty to Count One of the Indictment, that is, Coercion and Enticement, in violation of 18 U.S.C. §2422(b). The plea agreement was made under Federal Rule of Criminal Procedure, 11(c)(1)(c) to a period of 12 to 17.5 years of incarceration. The Court accepted the "c plea" arrangement prior to the Rule 11 plea colloquy and ultimately accepted Mr. Rehman's plea of guilty.

The facts underlying this issue are undisputed. Mr. Rehman was indicted on March 2, 2023 for his conduct on October 13, 2018 and November 7, 2018. He was arrested on March 7, 2023 and was cooperative upon arrest. The defense moved for Mr. Rehman's release and, citing his lack of criminal record and the fact that alleged conduct was almost five years old. The

magistrate court agreed and Mr. Rehman was released to Home Incarceration with two 3rd Party Custodians, on March 15, 2023 – his uncle, Rick Shahani and his mother Mubarak Rehman. He remained on release without a single violation. His uncle then began to show symptoms of dementia and had to be moved to a assisted living facility. In order to pay for the facility, Mr. Shahani sold his home and Mr. Rehman and his mother moved in with other relatives.

Because of his perfect compliance, on October 26, 2023, this Court permitted him to leave the home for a job interview. After Mr. Rehman was hired for the job, his conditions were modified by this Court to permit him to work on October 26, 2023. He has been under home detention, with permission to work, ever since.

In the thirteen ensuing months, Mr. Rehman has continued to earn the trust of the Pretrial Services Agency and the Court. Besides his work, the Court permitted him to go to a funeral, go to the airport to pick up his mother, and to regularly visit his uncle at a nursing facility. There has not been a single report of non-compliance and Mr. Rehman has not received so much as a parking ticket.

After the Court accepted Mr. Rehman's guilty plea, the defense requested release under 18 U.S.C. 3145(c) based upon exceptional circumstances. Mr. Rehman's uncle is 83 years old, suffers from advanced dementia and, as a result, has recently been battling recurring pneumonia.[1] He is transitioning into hospice care. In addition, Mr. Rehman's mother is 73 years old and is struggling with severe rheumatoid arthritis, diabetes, as well as hypertension and depression. Mrs. Rehman's issues have created challenges because she has lost her independence. Because of the rapid onset of these factors, the family has not yet been able to

---

[1] Mr. Rehman's uncle, Rick Shahani, is more like a father to Mr. Rehman, particularly since his own father's passing. Pretrial Services officer Christine Schuck noted the relationship and recommended Mr. Rehman be permitted to visit his uncle regularly as the visits benefited Mr. Shahani's health. ECF No. 24.

adjust to the significant adjustment in their respective burdens and still relies heavily upon Mr. Rehman's contributions. Finally, Mr. Rehman has never been incarcerated before – this case represents his first and only arrest. His inexperience, combined with the nature of his charges predicts a particularly negative experience at the jail.

At the end of the plea hearing, the government opposed Mr. Rehman's release. The government did not dispute that Mr. Rehman's mother and uncle were sick, nor did it contend that Mr. Rehman was anything but entirely compliant. Still, it argued that the circumstances were insufficiently exceptional to warrant release. The government cited to two cases in support of its opposition. This Court continued its decision, with the consent of both parties, and permitted the defense to file a written pleading.

## Argument

The government agrees that 18 U.S.C. 3145(c) provides discretion for the district court to release individuals who have been found guilty while pending sentencing. While the D.C. Circuit has not considered this issue, district courts and other circuits agree. *See United States v. Meister*, 744 F.3d 1236, 1238-38 (11th Cir. 2013) (finding that all eight circuits that have considered whether district courts can apply section 3145 have determined that they can); *United States v. Wiggins*, 613 F.Supp.3d 348, 355 (D.D.C. 2020) (J. Brown-Jackson) (same); *United States v. Harris*, 2020 WL 1503444 at *3 (D.D.C. 2020) (J. Moss) (same). However, the government asserts that Mr. Rehman should not be released because his particular circumstances are not sufficiently exceptional to use the "escape hatch" from the otherwise mandatory detention required under section 3143(a)(2). But other district court judges in this jurisdiction have found that personal circumstances and particular sets of personal circumstances qualify as

"exceptional."  Absent any binding law to the contrary, this Court should use its broad discretion and release Mr. Rehman pending his sentencing hearing.

Judge Bates has considered this issue in the most depth and has warned against the sort of broad-brushed approach urged by the government.  "Of course, the test under §3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"  *United States v. Roberson*, 21-cr-102 (JDB) ECF No. 69 at 5 (releasing child pornography defendant under 3145(c) where defendant expressed a risk of contracting COVID at the Jail, was concerned about his potential treatment at the jail and the impact of detention on his mental health treatment).  Acknowledging that courts have "found a clear definition of 'exceptional reasons' elusive," Judge Bates concluded that release under this statute "must be designed … for those defendants who are likely to face incarceration, but for whom something about the time between a finding of guilt and sentencing makes release appropriate."  *Id.* at 4-5.  *Roberson* also points out that a "defendant need not rely on just one reason that makes his circumstances 'exceptional'; instead 'exceptional circumstances exist where there is a '<u>unique combination of circumstances</u> giving rise to situations that are out of the ordinary.'"  *Id.* (emphasis in original (internal quotations and citations omitted).

Mr. Rehman moves for release with a combination of circumstances that are unique to him and the timeframe between the finding of his guilt and sentencing.  At the beginning of this case, Mr. Rehman lived with his uncle and his mother and was responsible for maintaining the residence and completing tasks beyond his elderly housemates.  Since then, both have fallen ill and Mr. Rehman was required to move.  Now, his uncle is about to enter hospice care and will likely pass away prior to Mr. Rehman's sentencing hearing.  His mother's own health issues

creates additional difficulty for the family – these burdens will be substantially compounded if Mr. Rehman is incarcerated during this period.  Mr. Rehman's personal characteristics and experience makes him a disturbingly easy target at a jail that has been the target of prosecution because of its longstanding corruption.[2] *See Roberson*, ECF No. 69 at 7 n.5 ("The Court agrees with defense counsel's observation that this defendant may be particularly susceptible to violence in the D.C. Jail given his offense conduct and personal characteristics.").

Other judges in the District have done the same, albeit without the same analysis provided by Judge Bates.  A quick survey of D.D.C. cases reveals a longstanding practice of allowing certain individuals to remain in the community pending sentencing, despite being subject to sec 3142 after a finding of guilt.  Many use the "escape hatch" in 3145(c), for example, Judge Cooper, in a pre-pandemic decision, found that "the Defendant's age, physical condition, lack of criminal history, family ties, and past compliance with release conditions, together with the Government's acknowledgment that he does not pose a risk of flight, constitute 'exceptional reasons' under the statute supporting release subject to appropriate conditions." *United States v. Chammas*, 16-cr-171 (CRC), Minute Order, Oct. 24, 2016; *see also United States v. Young¸*16-cr-82 (CRC); *United States v. Harris*, 2020 WL 1503444 at *3 (D.D.C. 2020) (J. Moss).  Other judges have also released defendants pending sentencing without an expressed ruling on the docket under 3145(c) – though one can infer such analysis because the mandatory detention statute was part of the plea agreement.  *See United States v. Pakdel*, 17-cr-165 (RJL); *United States v. Casten¸* 21-cr-357 (CRC);  *United States v. Mintz*, 22-cr-178 (JMC); *United States v. Bailey*, 21-cr-31 (TSC).  Other judges have ordered the presentence investigation prior

---

[2] Just last week, three additional individuals were presented in this court for illegal activities at the D.C. Jail.  Counsel can also report recent instances where individuals tested negative for illicit substances *until* being housed at the D.C. Jail – only to test positive while incarcerated.  Counsel is unaware of extent to which the Jail has corrected the issues laid out in *Roberson* but has been advised that the Court cannot order a defendant away from the D.C. Jail.

to the plea agreement and combined the colloquy with sentencing plea agreement. *See United States v. Ryan Cooper*, 19-cr-382 (BAH); *United States v. Ernest Wagner*¸19-cr-386 (DLF); *United States v. Parker*, 17-cr-47 (EGS); *United States v. Dejournett*, 20-cr-94 (DLF). Still others have conducted the plea colloquy but deferred "accepting" the plea until the sentencing hearing date. *See United States v. Williams*, 20-cr-54-2 (ABJ); *United States v. Wright*, 19-cr-336 (APM).[3]

The government opposes the defense request, relying principally upon *United States v. Braun*, 2024 WL 4528964 (J. Kelly, 2024). While *Braun* raised doubts as to the applicability of 3145(c) to cases pending appeal, it ultimately reaches the factual circumstances in that case. It ultimately concluded that Braun's bases for release were not exceptional because they were: 1) that his offense conduct was not as serious as others involved in January 6; 2) he was cooperative with law enforcement; 3) he is older and has a small business; and 4) he had the "typical ailments" of someone his age.[4] The court concluded that these factors were far from exceptional and denied release.

In contrast, Mr. Rehman's circumstances are exceptional, both as to him and to the time between his finding of guilt and sentencing. Mr. Rehman's uncle is about to enter into hospice care; he has been a significant caregiver to his elderly and ailing mother; and he faces worse-than-usual prospects for violence during detention pending sentencing. Moreover, he has been exceptionally, that is perfectly, compliant and has demonstrated that he poses no risk of danger to the community or of flight. Indeed, his compliance is so uncommon that the government

---

[3] Although this case preliminarily accepted the plea agreement, the Court has the discretion to wait until receipt of the presentence investigation report to conclude that the agreement is appropriate. Fed.R.Crim.Proc. 11(c)(3)(A).
[4] *Braun* is also among the few cases that opines that 3145(c) does not allow the District Court to release under that subsection.

cannot point to a single act of noncompliance and disputes none of the facts asserted by the defense. The Court should allow him to remain on release pending sentencing.

## Conclusion

Wherefore, for the foregoing reasons, Mr. Rehman respectfully requests that the Court permit him to remain on release under 18 U.S.C. 3145 (c).

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500