UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE. NO. 1:23-cr-00064-CJN |
| | : | |
| | : | |
| JASON REHMAN, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in sentencing the defendant, Jason Rehman. On November 21, 2024, the defendant pled guilty to one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). For the reasons set forth below, the government recommends a sentence at the high end of the sentencing range agreed upon by the parties pursuant to the plea agreement entered under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that is, 17.5 years of incarceration, to be followed by fifteen years of supervised release. This sentence balances the factors outlined in 18 U.S.C. § 3553(a), is "sufficient, but not greater than necessary to comply with the purposes of sentencing," and will protect the community from potential future crimes by the defendant.

**I.    Background**

Over the course of five weeks, from approximately October 13, 2018, through November 7, 2018, the defendant communicated with a 15-year-old girl (MV1) on Snapchat. He directed her to produce and send him child sexual abuse material, sent her explicit photographs of himself, and ultimately met her for sex. The defendant, who was 33-years old at the time, told MV1 he was 30-years old. Almost immediately after engaging in conversations with her, the defendant asked MV1

1

for her age, to which she responded she was "15" and shared with him sensitive information about her struggles with mental health and self-harm. Learning MV1's age and vulnerable mental state did not deter the defendant from turning his conversations explicit, requesting lascivious photos of MV1's genitals, and sending her pictures of his erect penis in return. For instance, on October 14, 2018, the defendant tells MV1 "I wanna see your V." When MV1 asks what he means, the defendant clarifies by saying "Vagina." Snapchat conversations between the two indicate that MV1 sent the defendant the pictures he requested, and that the defendant received them. The following is a transcript of the conversation on October 15, 2018, two days after the defendant initially contacted the victim:

> **REHMAN**: You know I wanna see your pussy
> **MV1**: Ik lmao xD
> **REHMAN**: Love it so sexy
> **MV1**: Fine one pic today xD
> **REHMAN:** No so close lol I wanna see it little further
> **MV1:** Alright xD
> **REHMAN:** Can I save it?
> **MV1:** Sure
> **REHMAN:** Fuck I love it
> **MV1:** Lollll
> **REHMEN:** I wanna put my big dick in you so bad
> **MV1:** Aww lol
> **REHMAN:** Looks so good
> **MV1:** Donâ€™t forget your 30 Iâ€™m 15 we might not do sex xD
> **REHMAN:** I know lol
> **MV1:** Lol
> **REHMAN:** But I think you want my dick in you
> **REHMAN:** Lol
> **MV1:** Lol omg yessss

**REHMAN:** [sends emoji]

**MV1:** [sends emoji]

**REHMAN:** You are so hairy I loveeeeeeee it so much

**MV1:** Aww lol

**REHMAN:** I hope I can be inside you more than 1 min lol

**MV1:** U can xD

**MV1:** Bring condoms xD

**REHMAN:** I will lol definitely

**MV1:** Lol alright

**REHMAN:** Do you wanna suck it first?

**MV1:** Hell ye Iâ€™m down for that

The defendant continues to ask MV1 for explicit photos in the days that follow. The following is a transcript of the conversation on October 16, 2018:

**REHMAN**: Send away babu

**REHMAN**: Baby*

**MV1**: Ready?

**MV1:** Lol xD

**REHMAN:** Yessss

**MV1:** Here it goes

**REHMAN:** Mmmm fuck I wanna fuck you

**MV1:** Lol xD

**REHMAN:** So wet love it

**MV1:** Lol xD

**REHMEN:** You should trim it or shave it%2C your pussy would look even better

**REHMAN:** ðŸ˜□

**MV1:** Ye um idk how too

**MV1:**  Itâ€™s hard for me lmao

**REHMAN:** Aw babe its not hard I can teach you

**REHMAN:** Or do it for you

**MV1:** Lol xD

**REHMAN:** Show me that ass baby. I love it

**MV1:** Idk it just hurts

**MV1:** Lol alright

**REHMAN:** It doesnt hurt to trim

**MV1:** Oof

**REHMAN:** Fuck I love it

**REHMAN:** Perfect butt babe wow

**MV1:** Lol thanks

**REHMAN:** Bend over and spread?

**REHMAN:** Or just bend over lol

**MV1:** Alright

**MV1:** Lol

**REHMAN:** Can you do a video bending over then turn around show me your pussy.

**MV1:** Lol alright

**REHMAN:** Omggggg I want you so bad

**MV1:** Lol xD

**MV1:** Too bad your 30

**REHMAN:** Would you let me put it inside you no condom?  Just slide him in then out one time?

**REHMAN:** I know ugh

**REHMAN:** But idc I still want you

**MV1:** No sorry u need a condom

**REHMAN:** Ok babe

On October 22, 2018, school officials were notified by another student that MV1 had been talking about meeting a 30-year-old male for sex. Fairfax County police interviewed MV1 who stated that she had been speaking to a male she knew as "Jayshon" on Snapchat. During the course of the investigation, two other minors disclosed having conversations with a 30-year-old male with a Snapchat username of "jase8899," who had requested photos similar to those the defendant requested from MV1. These two minors did not send the requested photos and blocked the

4

jase8899 account. Law enforcement issued subpoenas to Snapchat for the subscriber information and IP address of the account that was communicating with MV1 and the two other minors. The Snapchat returns indicated that the Snapchat account jase8899 was associated with the email address "jason@dirtymartini.com" and the IP address came back to the Dirty Martini bar in Washington, D.C. Ultimately, this Snapchat account was determined to belong to the defendant who was an employee at the Dirty Martini bar.

On November 9, 2018, the defendant was arrested by Fairfax County police officers and, after waiving his Miranda rights, consented to an interview. In his interview, the defendant admitted to owning jase8899 account and using this account to communicate with MV1. Significantly, he admitted to knowing that MV1 was 15 years old at the time that he requested she send photos of her genitals and when sending MV1 photos of his penis[1]. Additionally, the defendant admitted to traveling interstate by driving from Washington, D.C. to Virginia to engage in sexual intercourse with MV1 on one occasion and driving from Maryland to Virginia to engage in sexual intercourse with MV1 on a second occasion. During the arrest, law enforcement seized the defendant's phone and subsequently obtained a search warrant for its contents. A search of the defendant's phone yielded child sexual abuse material of MV1.

Law enforcement reviewed the saved Snapchat messages between MV1 and the defendant on defendant's phone. In these messages, as demonstrated, in part, in the transcript excerpts above and below, the defendant made numerous requests for photos of MV1's vagina and commented on his desire to have sexual intercourse with her. The defendant gave MV1 specific instructions on the type of photos he wanted MV1 to send him and, in graphic detail, explained what he wanted to do to her once they met in person.

---

[1] The government notes that the transfer of obscene material to a minor under the age of 16 is a violation of 18 U.S.C. § 1470 and is punishable for up to 10 years imprisonment.

5

The following is a transcript of a conversation on October 21, 2018:

**REHMAN:** Okay so pretend you are looking at a mirror and you take a picture but have your pants down and your underwear down so I can see your pussy

**REHMAN:** So it's like a selfie with a mirror so I can see your beautiful face and your pussy at the same time

**MV1:** Ohhhh I see

**MV1:** Ok sure

**MV1:** Flash on?

**REHMAN:** No flash because it will blur out everything

**REHMAN:** So just have your lights on

**REHMAN:** L

**MV1:** Awww

**MV1:** Lol alright

**REHMAN:** Can I save it?

**MV1:** sure

**REHMAN:** Show me that pussy

**REHMAN:** I love it

**MV1:** Lmao alright

**REHMAN:** Open it?

**REHMAN:** I wanna see it inside

**MV1:** Alright

**MV1:** LMAO

**REHMAN:** Spread your pussy babe

**MV1:** Alright xD

**REHMAN:** Omfg it is so tinyyyyy

**MV1:** Lmao xD

**REHMAN:** Babe I will cum in 5 secs wow

**MV1:** Lmao

**MVI:** Sorry for the tiny pussy xD

**REHMAN:** Can I please put him inside you no condom just in and out that's all

**REHMAN:** I want to feel it so bad

**MV1:** No

**REHMAN:** Ok

**MV1:** Sorry

**MV1:** Lol

**REHMAN:** No it's ok

**REHMAN:** So Monday 1000% we meet?

**MV1:** Well...

**REHMAN:** Ok loo

**MV1:** Lmao

**MV1:** But make sure u get there around 3

**MV1:** Btw

**MV1:** U know the park peterson lane park?

**REHMAN:** I'll Google it

**MV1:** Lol ok

**REHMAN:** When you get in my car kiss me.. don't be shy lol

**MV1:** Meet me there

**MV1:** And Iâ€™ll try

**REHMAN:** I will

**MV1:** Lol

**REHMAN:** Should I have my dick out when you get in my car?  Or wait? Lol

**MV1:** Wait

**MV1:** Lol

**REHMAN:** Lol we only have 45 mins

**MV1:** Ik

**MV1:** Iâ€™m shy tho

**MV1:** Lmao

**REHMAN:** So we make out a bit. Go down on each other and fuck?

**MV1:** Maybeeee

**MV1:** Lol

**REHMAN:** Lol you know you wanna fuck. Stop it pol

**REHMAN:** Lol*

    **REHMAN:** You want a big dick. No small dicks lol
    **MV1:** Lmao

On February 9, 2019, after the defendant had been arrested and the investigation was still in progress, the defendant contacted MV1 and asked that she lie to his attorney as to previously telling the defendant she was 18 years old. MV1 declined to do this and stopped communicating with the defendant.

On November 21, 2024, the defendant entered a plea of guilty pursuant to Rule 11(c)(1)(C) to one count of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b). Sentencing is scheduled for June 12, 2025.

### DISCUSSION AND RECOMMENDATION

**I.**    **Generally Applicable Legal Principles**

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

Nevertheless, in post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness

8

of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

### II.   Sentencing Guidelines Calculation

The government agrees with the Sentencing Guidelines calculation set forth in the Presentence Report, which states that the defendant's final offense level is 42 and his Estimated Guidelines Range is 360 months to life imprisonment. This range is based on a criminal history category of I, and a total offense level of 40, which includes an adjusted offense level of 45 after a 2-level increase for obstruction, pursuant to U.S.S.G. § 3C1.1; a 5-level enhancement as a repeat and dangerous sex offender against minors, pursuant to U.S.S.G. § 4B1.5; and a -3 reduction for acceptance of responsibility, pursuant to U.S.S.G § 3E1.1.

### III.  Government's Sentencing Recommendation

The parties have submitted, and the Court accepted, a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). In the agreement, the parties stipulated to a sentence of incarceration for a period of no less than 12 years and no more than 17.5 years. While this sentencing range reflects a downward variance from the Guideline Sentencing Range, the government believes it is appropriate as this disposition would be consistent with other similar cases, taking into account all of the sentencing factors in 18 U.S.C. § 3553(a), particularly the statute's mandate that the "[C]ourt

shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

Despite the seriousness of the defendant's conduct, a variance is appropriate in this case to spare the victim from the additional psychological and emotional harms that would be caused by a trial—particularly given her mental health struggles. The undersigned prosecutors previously discussed this resolution with the victim, who approved of the government's plea offer. Nevertheless, though the defendant obtains the benefit of a downward variance, the government recommends that the defendant be sentenced to the high end of this sentencing range—17.5 years of incarceration, to be followed by fifteen years of supervised release. Such a sentence would most appropriately reflect and address the seriousness of the defendant's conduct and serve as a deterrent for this defendant and others, while taking into account the victim's well-being. It also ensures that the defendant will be monitored for a significant period of time upon his release. Moreover, it is consistent with the § 3553(a) factors, as discussed below.

**A. The Nature and Circumstances of the Offense**

The defendant's conduct is particularly egregious. In the few weeks that he communicated with MV1, the defendant was able to convince her to send him explicit images, encouraged her to sneak out of her house to meet him, and convinced her to have sexual intercourse with her on two occasions—despite her multiple reminders to him that she was too young, as set forth in the excerpts above. From the outset of their conversation, the defendant asked MV1 her age and she informed him that she was 15-years old. From there, MV1's age would be acknowledged by the defendant multiple times and emphasized in many of their chats. For instance, the defendant commented on how young MV1 was and stated that he liked her lack of sexual experience. He repeatedly requested explicit photos and videos from MV1, instructing her to pose in various

10

positions and describing the parts of her body he wanted to see. The defendant did this while knowing that MV1 was a minor who had confided in him that she was a victim of bullying that prompted her to self-harm. Despite knowing this information, and while providing superficial advice under the guise of caring for her well-being, the defendant encouraged MV1 to sneak out of her house to meet with him for sex and attempted to manipulate her through constant flattery, repeatedly telling her she was perfect and making her feel special. These compliments were usually followed by additional requests for explicit images of MV1.

Additionally, the defendant repeatedly attempted to persuade MV1 to have sex with him without a condom—telling her that he would "just slide him in then out one time" and "just in and out that's all"—despite MV1 unequivocally telling him that she would not do so. These actions highlight the complete disregard that he had - not just for MV1's emotional well-being, but also for her physical safety. The defendant's willingness to risk her health and subject her to potentially permanent consequences – whether in the form of an STD or pregnancy—simply to satisfy his own sexual urges is unquestionably an aggravating factor with respect to the nature and circumstances of his offense. Moreover, his actions were not limited to MV1, as two other similarly aged victims disclosed being contacted and solicited? by the defendant on Snapchat. Fortunately for these minors, the defendant was unsuccessful in obtaining any images as they ceased communicating with him.

The defendant's actions show his contempt for the law and his utter disregard for the wellbeing of minors. Indeed, his contempt for the law was further demonstrated by his blatant attempts to have MV1 lie after he was arrested. Simply stated, the defendant's intentional actions pose a danger to vulnerable teens in the community and weigh in favor of a substantial sentence.

**B. History and Characteristics of the Defendant**

The defendant does not have a criminal history. However, his lack of a prior record does not correspond to a lack of criminal behavior. As noted above, after his arrest, the defendant attempted to conceal his crimes by asking the victim to make false statements to his attorney, urging MV1 to say that she had previously told the defendant she was 18 years old despite his admitted knowledge of MV1 being 15 years old in both his interview with law enforcement and on the Snapchat chats. Moreover, the defendant's actions against this minor victim are not isolated aberrations. He used similar grooming tactics on other minor girls that he attempted to engage with on the Snapchat application. Specifically, one of these minor girls stated that defendant asked how old she was, and when she stated that she was 16 years old, he proceeded to tell her he was "a sucker for cute feet," similar to the statements made to MV1 when convincing her to send him pictures of herself.

The defendant did admit his conduct to law enforcement during his custodial interview and indicated his willingness to accept responsibility at an early point in these proceedings, offering to apologize to the victim and her family. He also has a history of employment, and the government has learned of no pretrial release violations. Nevertheless, the government's recommended sentence of 17.5 years of incarceration is a reasonable sentence that is necessary to constitute a sufficient sentence

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just deserts" concept, answering the need for retribution so that the punishment fits the crime, and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose—essentially the "just deserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. From the defendant's standpoint the sentence should not be unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under similar circumstances. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59). *Id.*

Here, the defendant's offense is serious disturbing and was not the first time that he had engaged in such conduct. A sentence of 17.5 years of incarceration reflects this seriousness.

### D. The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

Congress, the Supreme Court, and the Sentencing Commission believe that general deterrence is an important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). Here, the government's recommendation includes a substantial period of incarceration, as well as a period of supervised release. The punishment is significant and commensurate to the crime. Thus, the government's sentence adequately serves this goal.

### E. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ] defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).

The U.S. Sentencing Commission's Judicial Sentencing Information shows that the average sentence length in this District for individuals sentenced under U.S.S.G. § 2G2.1, with a final offense level of 42 and Criminal History Category I, was 195 months (16.25 years) during Fiscal Years 2020-2024. The median sentence length was 174 months (14.5 years). The average length of supervised release was 179 months (14.9 years). The government's recommendation, which is slightly above these figures, is warranted based on the extent of the defendant's repetitive conduct and obstructive behavior. As noted above, the defendant did not just produce child sexual abuse material of the victim—one instance of which carries a 15-year mandatory minimum sentence—but he also traveled across state lines on two occasions to have sex with her – while attempting to engage in similar conduct with two other minors. The defendant subsequently engaged in obstructive conduct. The government's recommendation encompasses the entirety of the defendant's conduct and, accordingly, there is no unwarranted disparity presented by the government's recommendation.

### F.    Restitution

The government has made attempts to contact MV1 about the upcoming sentencing hearing and MV1's rights under the Crime Victim Rights Act, including the right to restitution. At this time, the government does not anticipate a restitution request from MV1; however, in the event the government obtains additional information regarding restitution from the victim, the government will notify the Court and defense with any changes prior to sentencing and requests that the Court determine a final restitution amount no later than 90 days after sentencing pursuant to 18 U.S.C. § 3664(d)(5).

## **CONCLUSION**

Taking all of the factors into account, the government respectfully recommends that the defendant be sentenced to a term of incarceration of 17.5 years of imprisonment, followed by a term of 15 years of supervised release. Such a sentence is a reasonable sentence that is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Angelica Carrasco*
ANGELICA CARRASCO
NJ Bar No. 154252015
Trial Attorney
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Ave., N.W.
Washington, D.C. 20005


 /s/ *Caroline Burrell*
CAROLINE BURRELL
CA Bar No. 283687
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530